# In the United States Court of Federal Claims

No. 20-1427C

(Filed: July 27, 2021)

|  |  |
|---|---|
| **6601 DORCHESTER INVESTMENT GROUP, LLC,** | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) |

*William B. Jung*, Mount Pleasant, SC, for Plaintiff.

*Sarah E. Kramer*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  With her on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Elizabeth M. Hosford*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

***SOLOMSON, Judge.***

This case arises under an alleged contract between Plaintiff, 6601 Dorchester Investment Group, LLC ("Dorchester"), and Defendant, the United States, acting by and through the United States Department of Housing and Urban Development ("HUD") and the United States Department of Veterans Affairs ("VA"), for the lease of apartment units to veteran participants in the HUD-VA Supportive Housing ("HUD-VASH") program.  Dorchester alleges that, in order to incentivize its participation in the HUD-VASH program, the government agreed to reimburse Dorchester for physical apartment damage caused by, and unpaid rent owed by, veteran participants.  According to Dorchester, however, the government ultimately failed to do so.  Dorchester now brings claims in this Court against the government for breach of an

express contract and an implied-in-fact contract.[1]  The government moves to dismiss Dorchester's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for, respectively, lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  In the alternative, the government moves for a more definite statement under RCFC 12(e).  For the reasons explained below, the Court **GRANTS** the government's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

I.     LEGAL AND FACTUAL BACKGROUND[2]

     a. HUD's Housing Choice Voucher Program

Congress created the Housing Choice Voucher ("HCV") program "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing."  42 U.S.C. § 1437f(a).  Through the HCV program, HUD provides participants with HUD-funded vouchers via local public housing agencies ("PHAs").  24 C.F.R. § 982.1(a)(1).  HUD funds the vouchers using annual contributions contracts it enters into with individual PHAs: HUD makes payments to a particular PHA, and the PHA in turn agrees to administer the HCV program in accordance with HUD requirements.  24 C.F.R. § 982.151(a)(1).  As part of the HCV program, the PHA issues HUD-funded vouchers to eligible tenants, *see* 24 C.F.R. § 982.1(a), who then use the vouchers to rent units from property owners participating in the program.  24 C.F.R. § 982.1(a)–(b).

The government does not lease the housing units from a landlord or a PHA.  Rather, each individual tenant participating in the HCV program signs a lease with the

---

[1] Dorchester initially also brought claims for promissory estoppel and attorney's fees, expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Compl. at 8, 10.  While Dorchester correctly concedes that these claims should be dismissed for lack of jurisdiction, it continues to pursue its breach of contract claims.  ECF No. 12 at 1-2; *Int'l. Data Prods. Corp. v. United States*, 492 F.3d 1317, 1326 (Fed. Cir. 2007) (holding that this Court has no jurisdiction over promissory estoppel claims); *Johnson Lasky Kindelin Architects, Inc. v. United States*, 151 Fed. Cl. 642, 651 (2020) (holding that this Court has no jurisdictions over claims sounding in tort).

[2] The facts alleged in Plaintiff's amended complaint are assumed to be true and do not constitute factual findings by the Court.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  The Court also has considered "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

landlord of his or her unit and pays a portion of the rent according to the tenant's ability to pay.  24 C.F.R. § 982.515.  The PHA then makes up the difference between the tenant's contribution and the allowable rent under a Housing Assistance Payment ("HAP") contract.  24 C.F.R. § 982.515.  Each HAP contract is between the property owner and the PHA, *see* 24 C.F.R. § 982.162(a)(2), and "must be in the form required by HUD."  24 C.F.R. § 982.451(a)(1).  The property owner is responsible for "performing all of the owner's obligations under the HAP contract and the lease," including collecting from the tenant both the tenant's portion of the rent (the amount not covered by the PHA) and any charges for unit damage caused by the tenant.  24 C.F.R. § 982.452(a)–(b).

### b. HUD-VASH Program

Established in 2012, HUD-VASH is a collaborative program between HUD and the VA that combines HUD housing vouchers with VA supportive services (*e.g.*, medical centers and community-based clinics) to assist homeless veterans and their families with finding and sustaining permanent housing.  77 Fed. Reg. 17,086 (Mar. 23, 2012); Compl. at 1.  To provide housing to eligible veterans, PHAs administer the HCV vouchers provided to veterans under HUD-VASH in accordance with the HCV regulations discussed *supra*.  *See* 24 C.F.R. § 982; 77 Fed. Reg. 17,087 (Mar. 23, 2012) ("[A]ll regulatory requirements and HUD directives regarding the HCV tenant-based program are applicable to HUD–VASH vouchers, including the use of all HUD required contracts and other forms.").[3]  Under the HUD-VASH program, as in the general HCV program, a PHA contracts with a property owner to make monthly rent subsidy payments directly to the owner on behalf of the veteran.  77 Fed. Reg. 17,087 (Mar. 23, 2012).  The participating veterans enter into separate leases with property owners and pay their share of the rent in accordance with their individual leases.  *Id*.

### c. Dorchester's Alleged Involvement With HUD-VASH

Dorchester is a South Carolina limited liability company with its principal place of business located in Charleston County, South Carolina.  Compl. ¶ 2.  At all relevant times, Dorchester was the owner of the real property located at 6601 Dorchester Road, North Charleston, South Carolina 29418, a multi-unit apartment dwelling (the "Property").  *Id*. ¶ 7.

In 2014, Dorchester alleges that an agent of the VA solicited Dorchester to lease apartment units at the Property to veteran participants in the North Charleston, South Carolina HUD-VASH program.  *Id*. ¶¶ 8–9.  Pursuant to that VA agent's representations and guarantees, Dorchester alleges that it entered into a contract with the VA, whereby

---

[3] While HUD has modified how some specific portions of the HCV program apply to HUD-VASH, none of the modifications are relevant to the instant case.

Dorchester agreed to rent its apartment units to veterans participating in the program, and the VA agreed to reimburse Dorchester for any physical damage to the apartment units that the veterans caused, beyond ordinary wear and tear, as well as for any unpaid rent (if the veterans defaulted under their individual leases).  *Id*. ¶¶ 9, 26.

Between 2014 and 2017, Dorchester leased apartment units to veterans participating in the program.  *Id*. ¶ 10.  At various times, several veteran participants breached their individual leases, either by failing to pay rent or vacating the premises prematurely.  *Id*. ¶ 11.  Additionally, in multiple instances, the apartment units were damaged beyond ordinary wear and tear, requiring Dorchester to expend funds and time to restore the damaged units in order to re-lease them to new tenants.  *Id*. ¶¶ 12–13.  The government initially reimbursed Dorchester on behalf of the veterans for unpaid rent and damage caused to the apartment units, but ultimately ceased making such payments.  *Id*. ¶¶ 14–15.  Subsequently, the government either ignored or denied Dorchester's timely written demands for amounts due for property damage and unpaid rent.  *Id*. ¶¶ 16–17.

Based on these allegations, on October 21, 2020, Dorchester filed a complaint in this Court, initially asserting four claims: (1) breach of express contract; (2) breach of implied-in-fact contract; (3) promissory estoppel; and (4) EAJA fees.  *Id*. ¶¶ 19–39.  On February 4, 2021, the government moved to dismiss the complaint pursuant to RCFC 12(b)(1) and 12(b)(6) for, respectively, lack of jurisdiction and failure to state a claim.  ECF No. 7.  In Dorchester's response to the government's motion to dismiss, Dorchester agreed that its claims for promissory estoppel and EAJA fees should be dismissed, but it continues to pursue recovery on its claims of breach of express and implied-in-fact contract.[4]  ECF No. 12.  Appended to its response, Dorchester provided various email

---

[4] Within its response to the government's motion to dismiss, Dorchester requested leave to file an amended complaint "should this Court determine that its pleadings with respect to Plaintiff's First and Second Causes of Action are insufficient."  ECF No. 12 at 7, 8.  On May 11, 2021, the Court held a telephonic status conference to discuss Dorchester's request in light of the government's pending motion.  ECF No. 14; Minute Entry, May 11, 2021.  The Court informed Dorchester that its complaint likely failed to allege that Dorchester dealt with a government agent with actual authority to bind the United States in contract, particularly in light of the fact that the express regulations governing the program at issue require a property owner to contract with a public housing agency rather than an agent of the United States itself.  Minute Entry, May 11, 2021.  After discussing the issues with the parties, the Court subsequently issued an order instructing Dorchester to file a status report indicating whether it: (1) would voluntarily dismiss its complaint without prejudice; (2) sought a ruling from the Court regarding the government's pending motion to dismiss and the sufficiency of the complaint as currently filed; or (3) sought additional time in which to file an amended complaint.  ECF No. 15.  On May 19, 2021, Dorchester filed a status report indicating that it did not intend to seek

exchanges between it and a VA employee, as well as several affidavits from Dorchester's management.  ECF Nos. 12-1, 12-2, 12-3.  The government filed its reply on March 25, 2021.  ECF No. 13.

## II.    STANDARDS OF REVIEW

Generally, "the jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009).  In relevant part, the Tucker Act grants the Court of Federal Claims jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).

In order to invoke this Court's jurisdiction over a breach of contract claim, the plaintiff must plead "a non-frivolous *allegation* of a contract with the government." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis in original).  To survive a RCFC 12(b)(1) challenge to jurisdiction based on breach of contract, the plaintiff "bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  If the Court determines that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Villars v. United States*, 126 Fed. Cl. 626, 631 (2016) (citing and quoting *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006)).

In deciding a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the Court views the facts in the light most favorable to the plaintiff and accepts as true all factual allegations — but not conclusory legal assertions — contained in the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).  Those facts must yield a "reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

---

leave to file an amended complaint and instead sought the Court's decision on the pleadings as currently filed.  ECF No. 16.

### III.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER DORCHESTER'S CLAIMS

At the outset, the Court must distinguish between a dismissal for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and a dismissal for failure to state a claim pursuant to RCFC 12(b)(6). "[Subject matter] [j]urisdiction . . . refers to the power of a court to hear and decide a case[.]" *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir. 1995) (citing *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed. Cir. 1992)). In contrast, a dismissal for failure to state a claim centers on "whether the complaint contains allegations, that, if proven, are sufficient to entitle a party to relief." *Id.* Because a dismissal for failure to state a claim necessarily requires a merits determination, "the court must [first] assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." *Do-Well Mach. Shop, Inc. v. United States*, 870 F.2d 637, 639 (Fed. Cir. 1989) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Our appellate court, the United States Court of Appeals for the Federal Circuit, has explained the proper inquiry as follows:

> [A] complaint alleging that the plaintiff has a right to relief on a ground as to which the court has jurisdiction raises a question within the court's subject matter jurisdiction as long as the asserted basis of jurisdiction is not pretextual, i.e., as long as the jurisdictional ground asserted in the complaint does not "appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction."

*Lewis v. United States*, 70 F.3d 597, 603 (Fed. Cir. 1995) (citing *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) and *Excelsior Wooden Pipe Co. v. Pacific Bridge Co.*, 185 U.S. 282, 287 (1902)).

The Tucker Act, this Court's primary jurisdictional statute, vests this Court with jurisdiction "over claims against the United States based on contracts 'either express or implied in fact.'" *Gonzalez-McCaulley Inv. Grp., Inc. v. United States*, 93 Fed. Cl. 710, 714 (2010) (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996)); *see also Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1059 (Fed. Cir. 2001) ("[T]he court does have jurisdiction over implied-in-fact contracts."). Consequently, "'the question of whether a contract exists' generally appears *not* to be 'a jurisdictional one,' unless, however, a plaintiff does 'not plausibly allege the existence of a contract.'" *Perry v. United States*, 149 Fed. Cl. 1, 12 (2020) (emphasis in original) (quoting and citing *Engage Learning*, 660 F.3d at 1355), *aff'd*, 2021 WL 2935075, at *4 (Fed. Cir. July 13, 2021); *see also Ibrahim v. United States*, 799 F. App'x 865, 867 (Fed. Cir. 2020) ("A non-frivolous allegation that a

6

contract exists between a plaintiff and the United States is sufficient to invoke the subject matter jurisdiction of the Claims Court, but dismissal may be proper for lack of subject matter jurisdiction if the claim is wholly insubstantial and frivolous." (quoting *Lewis*, 70 F.3d at 602–04 (internal quotes omitted)).  "The presumption . . . is that the dismissal of even a very weak case should be on the merits rather than because it was too weak even to engage . . . jurisdiction."  *Carr v. Tillery*, 591 F.3d 909, 917 (7th Cir. 2010).

Applying the above standards, the Court concludes that Dorchester has asserted non-frivolous, factual allegations of a contract with the government sufficient to invoke this Court's jurisdiction.  Dorchester alleges that "as a condition and incentive to gain [Dorchester]'s agreement to lease its individual apartment units to the veteran participant[s] in the HUD-VASH [program]," an agent of the VA agreed to reimburse Dorchester for both physical damage caused by, and unpaid rent owed by, the veteran participants.  Compl. ¶ 9.  Dorchester also maintains that the government initially did reimburse Dorchester for damaged units and unpaid rent before ultimately ceasing payment.  Compl. ¶¶ 14–15.  Whether these facts are sufficient to entitle Dorchester to recover – or even whether they are sufficient to support the formation of a valid contract at all – are not jurisdictional questions; rather, these questions require a merits determination.  *Engage Learning,* 660 F.3d at 1354 ("[W]hen the Court of Federal Claims determines that the plaintiff has failed as a matter of law to establish the existence of an alleged contract with the government, the proper disposition is to dismiss for failure to state a claim, rather than for lack of jurisdiction.").  Accordingly, considering all of Dorchester's alleged facts as true – as the Court must at this stage – we find that Dorchester plausibly has alleged the existence of a contract with the government sufficient to invoke this Court's jurisdiction.

### IV. THE COURT GRANTS THE GOVERNMENT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

"To recover against the government for an alleged breach of contract, there must be, in the first place, a binding agreement."  *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003).  In that regard, to survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must allege adequate facts that, if proven, establish: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract."  *Anderson*, 344 F.3d at 1353 (citations omitted).  In order for a government representative to bind the United States in contract, he must have actual authority; apparent authority will not suffice to bind the government by acts of its agents.  *Arakaki v. United States*, 71 Fed. Cl. 509, 515 (2006),

*aff'd*, 228 F. App'x 1003 (Fed. Cir. 2007) (citing *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)).  Actual authority may be implied, rather than express, "when such authority is considered to be an integral part of the duties assigned to a government employee."  *Landau*, 886 F.2d at 324.  However, "apparent authority will not suffice to hold the government bound by the acts of its agents[.]"  *Id.* at 324; *Jackson v. United States*, 573 F.2d 1189, 1197 (Fed. Cir. 1978) ("It is well established that the Government is not bound by the acts of an agent who only has apparent authority.").

Despite Dorchester's conclusory allegation of a "a valid and enforceable contract" with the United States, Compl. ¶ 20, Dorchester fails to allege any specific facts to establish the required elements of such an agreement.  In Dorchester's complaint, Dorchester offers no information on the identity of the VA "personnel" who allegedly induced Dorchester's involvement in the HUD-VASH program, nor does Dorchester provide any specific terms of the purported agreement with the government other than to generally contend that the government made "representations, warranties, and guarantees" that it would reimburse Dorchester for the acts of the HUD-VASH participants.  Compl. ¶¶ 8–10.  In its response to the government's motion to dismiss, Dorchester itself concedes that its complaint contains no such factual allegations and instead argues only that "[t]he specific details as to who made the alleged agreement, and when, etc., . . . may properly be addressed in the discovery process."  ECF No. 12 at 6.  Discovery, however, is only available where a plaintiff has filed a sufficient complaint; a plaintiff cannot survive a motion to dismiss pursuant to RCFC 12(b)(6) simply by relying on conclusory allegations and speculation about what discovery may unearth.  *See Brubaker Amusement Co., Inc. v. U.S.*, 304 F.3d 1349, 1361 (Fed. Cir. 2002) ("[The Court of Federal Claims] is not required to permit discovery based merely on the hope on the part of a plaintiff that it might find evidence to support its complaint.") (citations omitted).  Accordingly, and as explained in more detail below, Dorchester has failed to allege facts – even when accepted as true at this stage of the case – sufficient to establish that: (a) there was any meeting of the minds with the government, and (b) Dorchester reached a contractual agreement with a government official possessing actual authority to bind the government in contract (*i.e.*, even assuming *arguendo* there were a meeting of the minds with *some* government official).

Dorchester's allegation that an agent of the VA orally agreed to reimburse Dorchester on behalf of HUD-VASH participants directly contravenes the express regulations of the HUD-VASH program in several respects.  First, as described *supra*, a property owner participating in the HUD-VASH program is responsible for collecting from the veteran tenant both the tenant's portion of the rent (the amount not covered by the PHA) and any charges for unit damage caused by the tenant.  24 C.F.R. § 982.452(a)–(b).  Despite this regulation, which expressly places collection responsibility on the

8

property owner (not HUD or the VA), Dorchester alleges that an agent of the VA orally agreed otherwise by promising that the government would reimburse Dorchester "for any physical damage done to the apartment units by the veteran participants in the HUD-VASH . . . [and] for any unpaid rent due from the veteran participants . . . in the event said participants did not fully honor the payment terms of the individual leases with the [Dorchester]."  Compl. ¶ 9; ECF No. 12 at 5.  Outside of simply acknowledging the discrepancy between its allegations and the HUD-VASH requirements, Dorchester offers no explanation for the VA agent's purported disregard of this HUD-VASH regulation.  ECF No. 12 at 3, n.2; ECF No. 12 at 6, n.4.  A government employee may not bind the government to pay money contrary to law.  *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 414 (1990); *Total Med. Mgmt., Inc. v. United States*, 104 F.3d 1314, 1320 (Fed. Cir. 1997).

Although Dorchester alleges that it made an agreement with the VA directly, rather than with a PHA, Compl. ¶¶ 8–9, the HUD-VASH regulations expressly provide that each housing contract is between a property owner and a PHA, *see* 24 C.F.R. § 982.162(a)(2).  Further, despite the HUD-VASH regulation requiring that every housing contract within the program "must be in the form required by HUD," 24 C.F.R. § 982.451(a)(1), Dorchester alleges that it formed an oral agreement with VA personnel in contravention of that regulation and does not allege the existence of the requisite form.

Even assuming *arguendo* that a VA agent orally reached some agreement with Dorchester in contravention of the HUD-VASH regulations, Dorchester alleges no facts demonstrating that the agent had actual authority, whether express or implied, to bind the United States in contract.  Dorchester provides no information about the agent's job or duties such that any inference could be made that the agent may have had *implied* actual authority – let alone express authority – to modify the HUD-VASH program requirements.  Given the facts alleged, a VA employee's oral promise to reimburse Dorchester for expenses incurred by the veteran participants is not enforceable, whether under a contract theory or any other.  *See Liberty Ammunition, Inc. v. United States,* 835 F.3d 1388, 1401 (Fed. Cir. 2016) ("The government is not bound by its agents acting beyond their authority and contrary to regulation." (citing *CACI, Inc. v. Stone*, 990 F.2d 1233, 1236 (Fed. Cir. 1993))); *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1080 (Fed. Cir. 1989) ("Where an approving official exceeds his authority, the government can disavow the official's words and is not bound . . . ." (citing *Empresas Electronicas Walser, Inc. v. United States*, 650 F.2d 286, 223 Ct. Cl. 686, 688, *cert. denied*, 449 U.S. 953 (1980))).  In sum, Dorchester's failure to identify any government agent acting with actual authority is fatal to its breach of contract claim.  *Yifrach v. United States*, 145 Fed. Cl. 691, 707 (2019), *aff'd*, 825 F. App'x 899 (Fed. Cir. 2020) (affirming the trial court's holding that the complaint failed to state a claim for breach of contract because it did

not plausibly allege that any of the government officials with whom the plaintiff worked had actual authority to bind the United States); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1327 (Fed. Cir. 1997) (holding that the "alleged implied-in-fact contract for the direct reimbursement of the x-ray technician [could not] be enforced under the Tucker Act, *even if TSG could show the remaining elements of contract formation*[,]" because the plaintiff failed to allege that the government agent with whom it dealt had actual authority to bind the United States (emphasis added)).

In an attempt to supplement the allegations in the complaint regarding the existence of an enforceable agreement with the government, Dorchester relies on an email thread between its employees and a VA agent, purporting to show an arrangement by the VA to reimburse Dorchester for excess damages caused by veteran tenants. ECF No. 12 at 3. The email thread and accompanying affidavits, attached as exhibits to Dorchester's response to the government's motion to dismiss, are likely outside of the scope of material that this Court may consider when deciding a motion to dismiss. *See American Contractors Indem. Co. v. United States*, 570 F.3d 1373, 1376 (Fed. Cir. 2009) ("On a motion to dismiss, the court generally may not consider materials outside the pleadings."). On the other hand, when deciding a motion to dismiss, the Court is permitted to consider, in addition to the complaint itself, "documents incorporated into the complaint by reference," "matters of which a court may take judicial notice," and documents that are "integral to the complaint." *Bell/Heery v. United States*, 106 Fed. Cl. 300, 307 (2012), *aff'd*, 739 F.3d 1324 (Fed. Cir. 2014) (citations omitted). The Court is skeptical that Dorchester's exhibits fall within any of these categories.

Nevertheless, assuming the Court were permitted to consider the emails and accompanying affidavits, we find them unpersuasive. Dorchester points to the existence of a putative landlord mitigation fund, including a statement by the VA agent that "[t]here is some money in the fund for damages that are over and beyond normal wear and tear." ECF No. 12 at 3; ECF No. 12-2 at 3. In that very same email thread, however, the VA agent expressly informed Dorchester that "I cannot give you an expected payment date as *we do not control the fund*." ECF No. 12-2 at 5 (emphasis added). While these emails suggest that certain VA staff assisted Dorchester in navigating the process of applying for reimbursement from some sort of third-party or government fund, the emails do not demonstrate that Dorchester had an enforceable contract with the VA, or even that the agency provided Dorchester with an (unenforceable) naked promise to pay upon which Dorchester may have relied.

Dorchester also relies on the email threads in an attempt to "demonstrate[] that the VA acknowledged the existence of the agreement [that] is generally alleged in the Complaint." ECF No. 12 at 6. Dorchester appears to argue that because the VA agent

10

purportedly acknowledged Dorchester's claims for reimbursement, the VA itself is indeed bound to reimburse Dorchester. Such *ipse dixit* at best is "a thinly veiled claim for promissory estoppel, over which we do not have jurisdiction." *Carter v. United States*, 98 Fed. Cl. 632, 638 (2011) (emphasis omitted). Dorchester concedes as much. *See* ECF No. 12 at 1 ("[Dorchester] concurs that its Third Cause of Action, stating claim for recovery under promissory estoppel, should be dismissed with prejudice as a claim for promissory estoppel, being related to [a] claim for an implied contract at law, is not recognized by this Court.").

## V.  CONCLUSION

For the foregoing reasons, the government's motion to dismiss pursuant to 12(b)(6) for failure to state a claim upon which relief may be granted is hereby **GRANTED**, and Dorchester's complaint is **DISMISSED**. The government's motion, in the alternative, for a more definite statement is **DENIED AS MOOT**. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**

s/Matthew H. Solomson
Matthew H. Solomson
Judge